Next case is Wilmoth v. Secretary of State of New Jersey Paul Rossi v. Trenton Poole v. Larry Otter It is a reversible error to dismiss constitutional claims on a 12b6 motion to dismiss when every other reported federal district and court of appeals decision have unanimously held identical claims to be meritorious, not just merely cognizable. Barkley v. Lincoln Commission Correct He wants to participate in a Democratic primary Correct The Supreme Court has specifically said in Ray v. Blair that state political parties are mere affiliates of the national political party. A Michigan Democrat can't raid the Democrat party in New Jersey. And Trenton Poole is also a registered Republican who primarily circulates election petitions for Republicans. There's no party raiding there though because the record indicates he wants to circulate in a Democratic primary. Yes he does. So with respect to the claims of him wanting to circulate for Republicans, there's no party raiding involved. He does want to and he does occasionally circulate for more moderate Democrats who are sort of closer to his libertarian viewpoint. Why does he have a right to do that? I mean the parties do get to exercise corporate, if you will, control over their primaries. Yes they do. And this is a long answer. First of all, the associational interests of the Republican and Democrat parties are actually no different than the Greens and Libertarians. Unlike ballot access where they have an advantage because they have historically shown support in the community, the associational rights of the First Amendment for the Republican, Democrats, Libertarians, and Greens are not special. Everyone has those same associational rights. The associational rights of the Republican party are fully protected by the fact that only registered Republicans can sign the petition, only registered Republicans can actually cast votes for the candidate, and only registered Republicans and vice versa Democrats can actually be the candidates for the party. So their associational interests are fully protected. Just like they can dictate who can participate in the primary, why shouldn't those parties be able to dictate who can participate in the process by which one becomes eligible to be on the ballot? A circulator is simply engaging in speech. He or she is providing a petition and convincing them to sign the petition, but ultimately the decision is completely vested in the Republican or the Democrat to sign that petition. The circulator has no, the only operative signature on a petition is the registered voter, and the courts have clearly stated that, first of all, candidates have the right to select the spokespersons of their choice. That's in Mayer v. Grant at page 424. But if somebody wants to be a standard bearer for a particular party, shouldn't the party get to determine who gets to participate in that process? The candidate who is seeking to get on the ballot can use any circulator that they want, Republican, Democrat, unregistered or otherwise. So there is legal support, you're saying? Yes. What about all these associational rights cases that talk about the rights of the political parties to dictate who participates in the process? But a circulator isn't participating in the process. He is simply engaging in First Amendment speech just like a voter. A vote is First Amendment speech from some people's point of view. It's all speech, just in different forms at different parts in the same process. Well, I think everybody in this court would agree that if there was a state statute that said Republicans couldn't send campaign material to Democrats during their primary to try to get them to vote for one candidate or another, that would be clearly unconstitutional. So is your real challenge the party affiliation requirement? Because that's not what your opening brief is about. Your opening brief is all about the residency requirement. Exactly. And so what is your brief with the statute? Is it the registration requirement? Yes. The state? The residency requirement. I'm simply reacting to their more novel defense that somehow the Republican and Democrat parties, that these cases are unique in that this case is somehow unique from the broad swath of cases where it says residency requirements are unconstitutional. They're subject to strict scrutiny and that New Jersey doesn't have any compelling governmental interest, which is narrowly tailored by this restriction. We are challenging the residency requirement and the voter registration requirement. That's all we're challenging. You're not challenging the party affiliation, correct? Correct. I just want to make sure we're correct. I also want to follow up on what Judge Hardman asked you. He asked you about the corporations are not at issue. And you said yes, the corporations are not at issue, but there's still parties in this case. I don't understand how they have within the zone of interest the corporate entities of this statute. Well, they are simply the alter egos of Sean Wormuth and Trenton Poole. They are the entities that are actually being contracted, and they are sole entity corporations. Trenton Poole is benefit consulting. Sean Wormuth is signature masters. So how do they have – they're still corporate entities. How do they have prudential standing in this case? Well, maybe they don't. I mean, maybe they were improperly added to the complaint. It was added simply to bring clarity as to who is circulating the petitions in New Jersey. And we are simply reacting to their defense that the Republican Democrats have these associational rights. How dare you try to circulate to our people. I mean, the First Amendment protects the right of party members to associate and organize with non-party members to achieve political goals. That's probably stiff. There is simply no – two-thirds of our claims are that a Democrat can circulate to Democrats and Republicans can circulate to Republicans. Trenton Poole does have this additional carve-out that he wants to circulate, and he did circulate for Rocky De La Frenta, who was a Democrat in 2016, and he's a registered Republican, and there wasn't any problem in most of the states with respect to that. Also reacting a little bit to Maslow. Maslow clearly doesn't apply here because Maslow didn't deal with out-of-state circulators and they didn't deal with people who were actual party members circulating to other party members. So that's what we're reacting to in that respect. Now, Willmuth circulated on behalf of La Fuente in 2016 in New Jersey? Correct, yes, Your Honor. He was a registered Democrat. Was La Fuente on the ballot? He did make it onto the ballot, yes. Did you reserve time for a rebuttal? Yeah, I reserved time for the rebuttal. Did you? Yes, I did. Five minutes. Okay. Thank you. I think I forgot – I failed to ask for it up front, Your Honor. I did, I did. Yes, sir. The other aspect with respect to this is, especially when you're circulating petitions for presidential electors in presidential campaigns, which is primarily what they want to do in New Jersey, the Supreme Court has clearly stated that in Innocent v. Celebrities that states have a minimal interest in imposing restrictions on candidates and that includes with respect to the circulation of petitions. I'll reserve the balance of my time. I just want to get clear on one question. Sure. And that is that the party affiliation requirement is not at issue in this matter? From our standpoint, it is not. They have raised it as a defense. Okay. And we're trying to react that. Okay. Political parties don't have – you know, in one case, Mayor Grant said the risk of deceit and fraud is more limited at the petition stage. We're suggesting in defense to what they're suggesting, that the association of rights of a political party doesn't go all the way down to circulators. As a registered Republican, I would be very resentful if my Republican party said I couldn't talk to a Democrat when I decided who I wanted to sign – if I wanted to sign a petition or not. That's offensive to the First Amendment on a whole host of bases, Your Honor. And we're simply reacting to that. Because the case law is pretty clear in this area, attorney generals have had to try to bring up more unique defenses to these restrictions, and it's that somehow the GOP and the Democrats have this unique association of rights that prevents an unregistered voter from daring to circulate a petition. Again, a circulator is simply offering a piece of paper and engaging in communicative speech. Ultimately, it's up to the registered Democrat or registered Republican to actually put that signature on the petition, which is the only signature that matters in this case. Thank you, Your Honor. Thank you, Mr. Rossi. Mr. Cohen. Thank you, Your Honors. May it please the Court. I want to pick up with where Mr. Rossi ended up. He said a circulator simply is circulating a piece of paper. That's correct, and that's all we're requiring here. That the right of free speech, the right to communicate, the right for Democrats or Republicans, circulators to talk to anybody at any time is not infringed in any way. What we do require in order to ensure that Democrats are, in fact, circulating petitions for Democrats and Republicans for Republicans, that the circulator, the person merely holding the piece of paper, has to be a registered Democrat or Republican, depending on the primary, in the state of New Jersey. But that's where you get into potential trouble when you say in the state of New Jersey, right? Right. I mean, there's really, I don't understand, frankly, the party rating argument. Wilmoth is a Democrat and he wants to circulate for a Democrat. To the extent Poole is circulating for Republicans, there's no party rating, is there? The party rating argument goes to what, and the key phrase here is verification. How can we ensure that the person circulating the petition is, in fact, a Republican for the Republican party and a Democrat for the Democratic party? You just say, well, we're just going to rely exclusively on the SVRS system. The SVRS system gives us an automatic, instantaneous verification. Terrific, and that's one way to do it, but that doesn't mean that there aren't other ways to verify, right? Isn't it within New Jersey's rights to say, look, if you're a Democrat from Philadelphia and you want to circulate on behalf of a Democratic presidential candidate in New Jersey, you've got to show us your credential. Right. That seems like an easy way to protect their free speech rights, rather than saying we must exclusively rely on the state system. Our view is that easy way actually may cause more problems than it solves. You're right, Your Honor. There could be other alternative methods. We're not required to find the least restrictive. We believe the courts support that. The method we have now is a minimal burden. It's narrowly tailored, but to your point, You can't say it's a minimal burden when people in 49 states can't meet it. It's an insurmountable obstacle to all Democrats in 49 states. But the Democrats or the Republicans here are, the voters' rights that are in interest here are registered Democrats and registered Republicans are those people who might register in the party primaries in New Jersey. All the other cases cited from Buckley on, we're talking about in Buckley, initiative and referendum where you want to address all the voters. Here, the class of voters, the rights we're talking about are the rights of the people who are Democrats and Republicans, their associational rights. Every one of those, the 2.1 million Democrats and the 1.2 million Republicans can all be circulators, and they can talk to anyone. And the Democrats and Republicans from out of state can come in and talk to anyone and do anything except hold that petition. They can hold ballots. Since we're dealing with the core First Amendment rights, Yes, Your Honor. isn't it necessary for the state in this case to carry the burden of proving that the means it's employed here is the least restrictive? I think we do show, well, maybe not the least restrictive. It's a minimum burden, and it doesn't have to be the least restrictive. I think we've demonstrated that. Don't you have to show that there's a compelling state interest and that the means chosen are narrowly tailored to meet that compelling interest? If you apply the strict scrutiny standard. We don't believe the strict scrutiny standard. We believe we can meet that, but we don't believe that applies here. We think it's to a lesser degree that this is a reasonable. What courts have said that this is not core political speech? It's not core political speech, and I point to initially the Justice O'Connor concurrence in Buckley where she breaks down the one-on-one communication that Mr. Rossi talked about. That's available. The out-of-state Republican or Democrat can come in and talk to anyone, knock on any door, represent anybody. Do you have anything else besides her concurrence in Buckley that says that this is not core political speech? Circulating petitions is not core political speech? Circulate, again, I think it's broken down to it has a dual role. There's a core political speech element. Yes, if you're circulating petitions, you're going to be involved in talking to voters. So it is core political speech. I think it carries both elements. I mean, I thought it was. Judge Van Aske just mentioned it, and I thought it was. But you're telling us it's not or it is or it depends. Well, again, I think you're saying— Just because it is core political speech doesn't mean that you can't regulate it. Correct. But to Judge Van Aske's point, if it is core political speech, then the strict scrutiny standard will apply. And I think the language from Burdick says that it would not fall within the strict scrutiny, and the language is when those rights are subjected to severe restrictions, the regulation must be narrowly drawn to advance the state interest. But when a state law provision imposes only reasonable, non-discriminatory restrictions upon the first and 14th rights of the voters, the state's important regulatory interests are generally sufficient. Here we believe that the core state interest is ensuring the integrity of the electoral process. As Mr. Rossi said when he said all they're doing— they can talk to anyone, but the circulator is the very first element, I think Judge Schwartz pointed out. They are the first element in the process. Determining who is on the ballot determines who you can vote for. So it's certainly an important interest. And I would say it's a compelling state interest, even though we don't have to make that argument, but it's compelling. We throw around the terms, the integrity of the process, I think over the last year and a half, two years, where you have major figures in the process talking about rigged elections and the integrity of the process. We have a presidential commission investigating the integrity of the process. It's important and a compelling interest that the voters of the country, and certainly the state of New Jersey, believe in the integrity of the process. Don't we need a record to make this kind of decision on the effect of the requirement that there be registered voters in New Jersey for purposes of assuring their party affiliation? Don't we need to have a record developed on that? How can we decide this on a motion to dismiss? I don't think so. Not at all, Your Honor. I think, in fact, the record we already have is similar to what the court ruled on in Buckley. We know the number of registered voters. That's a matter of public record from the voter registration system. We know what the law is involved in here. This is strictly a legal issue as to whether or not the voter registration system requirement here, i.e. being registered voters, meets the constitutional requirements, and we believe it does. Are you defending this statute's requirements on residency simply because it provides a means to verify party affiliation? Because the statute seems to have a variety of requirements. You have to be a registered voter in New Jersey, and then that person has to have the same party affiliation as the person whose petition is being signed. Pulling back that last clause, if there wasn't a party affiliation requirement, would this statute be subject to a declaration of unconstitutionality based on the other case law that my colleagues have mentioned? What I can tell you, Your Honor, is that there is no party affiliation requirement for, or there is no residency requirement, no voter registration requirement, for any other election in New Jersey. It's only for the partisan primaries. So it is, in fact, for one purpose only, to verify that they are, in fact, Democrats or Republicans, that a Republican is not trying to get a weak Democrat on the side. So it's to protect the parties? To protect the parties and the associational rights, not only of the parties, but of the voters. Those Democrats and Republicans who are registered in New Jersey... What should we make of the fact that the parties have not intervened in this case? Why aren't they necessary parties? I think you can make of it that they are supportive of the law, that they have not come in and said, we also... They're so supportive that they're not here. They, for whatever reason, they didn't want to carry the ball, pay the legal fees, whatever it may be. I don't know why they weren't involved. But I think you could argue that they know the law is clear, and has not stopped anyone from getting on the ballot. In 2016, one argument is that by having them to be registered voters, it supports the mainstream party and the party apparatus. Or one could argue that Mr. Sanders and President Trump weren't mainstream parts of their parties, but they still were... Yeah, I think that's your strongest footing, speaking only for myself. I mean, you're right. These people that might have not been sort of the insiders in the party didn't seem to have any trouble getting on the ballot in all 50 states. And Mr. De La Fuente got on the ballot, right? That's correct. So, okay, your argument then is this works because non-traditional candidates can still get on the presidential ballot in New Jersey. Correct. But there's a big but, I think. The big but is people like Mr. Poole and Mr. Wilmoth have First Amendment rights to court political speech, right? So is our evaluation supposed to be based upon whether people like Roque De La Fuente can get on the ballot, or should our evaluation be based on whether Wilmoth and Poole have a First Amendment right to speak in the way that they hope to speak in New Jersey? It can be both, Judge, because everything you said is correct. Mr. De La Fuente can get on the ballot. Remember, New Jersey only has a maximum of 1,000 signatures required. In the Green Party case from the Eastern District of Pennsylvania, it was over 16,000 signatures that were needed. And that was also, again, for a non-political party. The Green Party doesn't have a primary, so any voters could sign it. Any Democrats or Republicans could sign that. But to your point, yes, Mr. De La Fuente could get on the ballot, and, B, Mr. Wilmoth and Mr. Poole can come in and do everything you said. They can do everything but hold the petition. So their argument is, by requiring them to have a registered Democrat come along and increase their costs, well, if it might increase their costs, it might not, and we don't need a record for that, whatever it is. Anyone who can afford to have a paid political operative come in from out of state, they'll tell them what it costs them to go around with a Democrat or a Republican. They may need five of them, ten of them. And how they conduct their business is up to them. They want to bring in people from Michigan and Texas and pay for their airfare and put them up and pay for housing, that's fine. But they can do just as well. I make the argument, obviously, of using New Jersey voters. The point is the statute does not put any kind of real burden on them. It might require them to do a little training. They might have volunteers. Mr. De La Fuente might be such a candidate. They come in, they do their political speech. How is the record for this? Again, Judge, I don't think you need that record where the statute is the record that you're required to be a registered Democrat or Republican. Anything else Mr. Wilmoth or Mr. Poole can do. It only says for the circulator of the petition, you have to be a registered Democrat or Republican. You have to be a registered voter in the state of New Jersey for that particular part. Right. So you have to be a resident of New Jersey. Right. The residency is an ancillary requirement. Anything they want to do. They can come in. They can do all the speech, all the organizing, all the door-to-door knocking. Anything they want they can do. The only thing is if they want to have the petition circulated. You can't do the thing that's most important to them, which is try to get a lot of signatures because that's the precursor to running a successful campaign, right? Right. But to get those signatures, obviously, they're going to have to convince people. So they do have to have a Republican or Democrat, depending on the party primary. I still don't understand what state interest this is furthering. The trial judge's opinion talks a lot about party rating. If that's a red herring, to the extent that Democrats from out of state, I forget where. He's Michigan. Right. What's the state interest here other than just verifying that, in fact, Poole is a registered Republican in Texas and Romoff is a registered Democrat in Michigan? The state interest is the associational rights of the political parties. But then that's a national party. This is a national election. If this were for the Board of Supervisors for a county, I think you're on a totally different footing. Aren't you? Because that's a local election. But we're talking about a national election here. Even for the national election, the parties still have the associational rights of ensuring only Democrats are circulating Democratic petitions and only Republicans. We're starting from that premise. I think they've pretty much given up on Poole being able to hijack the Democratic primary as a Texas Republican. To your point, Judge, again, it's simple. And it may seem that, simply put, it's about verification. But can't you verify by getting an affidavit and a consent to jurisdiction? Why do we have to have a residency requirement, too? Because then we have to rely on, the state of New Jersey has to rely upon these circulators bringing in something. Right now, any Democrat or Republican circulator doesn't have to do anything. But it's better for you if you want verification. It's better that they bring paperwork, right? You could have a simple rule, a statute in New Jersey, or maybe even a party regulation, I don't know, that says for any circulator who's not a registered New Jersey Democrat, who circulates for presidential candidates for the Democratic primary, they must provide, in writing, proof that they're a Democrat in their state of residency. And I understand that argument, Your Honor. What New Jersey's position is, though, that sets up candidates. It almost creates a problem for the candidates themselves. If their circulator does not bring in that piece of paper, New Jersey is then confronted with a petition that cannot be properly certified as having been signed by the voters. And they're faced with the dilemma of then invalidating that candidacy. We think it's safer. You just told us a few minutes ago, in your brief, that with over a million registered Rs and a million registered Ds, it's not that hard to get people on the ballot. And it's not hard to get them as circulators, to have them act as circulators. We believe, again... I feel like we're circulating. Your Honor, again, for the state of New Jersey, the important interest is the electoral process, the associational rights of the parties, and that it's best served by having this requirement. Thank you, Mr. Connolly. Thank you, Your Honor. Mr. Rossi? Yes. Coming back... You're circulating. No, I will try not to. We want to create a record here because, for instance, we're litigating the same issue in the Middle District of Pennsylvania. Three days of depositions. We had over a thousand pages of deposition testimony with respect to all of the burdens that these residence requirement and voter registration requirements impose upon circulators. What's the Middle District case? Pardon me? What's the name of the Middle District case? The Middle District case... Oh, Lord. Is it Poole? Poole versus HL. Thank you. That's currently pending in the Middle District. It's all motions for summary judgment. We had three days of deposition testimony. The burdens imposed on circulators is manifold and vast. What's the status of the Connecticut case? We prevailed on the motion for... Temporary injunction. We prevailed on the temporary injunction, and Connecticut settled. They didn't want to litigate it to the Americans. They gave up. And they raised all the same arguments that New Jersey is raising, and they didn't want to take it to motion for summary judgment. Do you think that a circulator should at least be a registered voter in some state? No. From my standpoint, I'm a registered voter, so I don't think it's a particularly big deal to be a registered voter. You really ought to be a registered voter if you really care about the political process. Do you think they should be at least 18? Pardon me? Do you think they should be at least 18? They need to be 18. Correct. Justice Ginsberg in Buckley, she specifically made note that not being a registered voter is a form of speech in and of itself. I mean, people who are disaffected may not want to be a registered voter until they have a candidate they want to support. Therefore, the unregistered people have a right to circulate and get their candidates on the ballot as well. But your real complaint about this statute is the residency requirement. Well, the voter registration requirement makes it a residency restriction because you can't be a registered voter in New Jersey unless you're a resident. But your real complaint is that it's not. That's our entire complaint. The residency restriction and the voter registration requirement is our entire. Again, the whole party rating thing was simply trying to explain how that does not work and Maslow doesn't apply. And this case is identical to Wilmoth where we prevailed. Judge Hall was bound by Maslow and properly distinguished it, and Connecticut gave up and settled the case. In your brief, you asked us to declare you prevailing parties. Should we do that? If you're declaring a prevailing party, would you agree that that's not a prevailing party? We are not prevailing parties if you remand. Different circuits have different requirements that for purposes of an eventual attorney fee petition that you make that statement. I apologize if I look like a rude by putting that in my brief. I just want to make sure I didn't miss a step in the procedural process. Exactly. Now let me also say, I don't want to poke a tiger here because I like where you may be going with this, but who knows. We can be deceptive about this. Absolutely. Going out in law school is the only thing I was going to get in, and I didn't get the A. Unfortunately. That wasn't my fault. It was the professor's fault. But I would suggest that New Jersey doesn't require party affiliation for Libertarians and Greens, but they do for Republicans and Dems, even though it's not in the statute you'd be registering. That creates an equal protection violation. If you said it's not in the statute, how would we know that then? Does party affiliation require it? Connecticut doesn't, New Jersey doesn't require to be a New Jersey registered voter with respect to the party affiliation. But I would suggest that it is a problem to suggest that pool can't circulate for a Democrat candidate. First of all, the Democrat has asked him to do it, and only Democrats can sign that petition. He's simply engaging in First Amendment speech. I thought we didn't care about party affiliation. I don't. Okay. I'll shut up and sit down. Thank you, Your Honor. We ask that we be remanded so that we can develop a record. Thank you, Mr. Rossi. Thank you, Mr. Cohen. Like the first case, that case will be taken under advisement.